[No. 31723. Department One. August 9, 1951.]

JAMES M. PRICHARD, *Appellant*, v. CONSTANCE CONWAY, *Individually and as Executrix, Respondent.*[1]

[1]Reported in 234 P. (2d) 872.

*Marion Garland, Jr., William R. Garland,* and *Gerard N. Fisher,* for appellant.

*James O. Arthur,* for respondent.

Hill, J.—We are here concerned with the legality of the contract whereby a widow sold her deceased husband's dental practice, including lease, equipment, accounts receivable, etc., and with her conduct with reference thereto. The question actually presented is the sufficiency of the amended complaint of the purchaser, which challenges the legality of the transaction. The trial court held that it does not state a cause of action, sustained a general demurrer, and entered an order of dismissal with prejudice, and the purchaser appeals.

It appears from the amended complaint and the exhibits attached thereto that Constance Conway, as the widow of Dr. Stephen V. Conway and executrix of his estate, had become the owner of the equipment, accounts receivable, a lease, and the going business known as "Dr. Conway's Dental Clinic," and that she entered into a contract for the sale thereof to Dr. James M. Prichard in December of 1949.

The purchase price was to be paid in installments of three hundred dollars a month for ten years, a total of thirty-six thousand dollars. In addition, and specifically as payment for the "going business," Mrs. Conway was to have more than one half of the net profits for the first five years, her percentages to be seventy for the first year, sixty for the

second year, and fifty-five for the following three years. Thereafter, Dr. Prichard was to have all of the net profits. It is to be noted that, before any profits were to be divided, three hundred dollars was to be paid on the purchase price and Dr. Prichard was to draw seven hundred fifty dollars each month, in addition to the payment of all other operating expenses. It is to be noted, further, that, without any investment on his part, Dr. Prichard was taking over an established dental practice.

The contract recites that Dr. Prichard had no money available with which to make a down payment, and it was contemplated that Mrs. Conway would

". . . of necessity dedicate a considerable portion of her time to the protection of her security and advancement of the interest of the business in order that it may return to her the amount contemplated by the parties as purchase price under all of the circumstances now existing."

Implementing that recital is paragraph 7:

"It is further agreed that the doctor shall spend his whole time to the professional care of the office and shall have exclusive control over professional conduct and practice in said office and that the seller shall have the right to be the manager of said business and shall have the right to superintend the business management of the office."

Under the provisions of the contract for her protection, title to fixtures and equipment was reserved to Mrs. Conway to secure the payments provided for by the contract; the lease was to be renewed in her name until payment under the contract was complete, at which time it was to become the property of Dr. Prichard; and all new accounts receivable were to be assigned to her during the first five years, "as security only."

Our decision in the case of *State v. Boren,* 36 Wn. (2d) 522, 219 P. (2d) 566, was filed June 7, 1950. Dr. Prichard, conceiving that, under the terms of that decision, certain provisions of his contract with Mrs. Conway are illegal, notified Mrs. Conway July 12, 1950 (while a petition for rehearing in the *Boren* case was still pending),

". . . that the contract is illegal so far as it provided for your participation in the business in any way and any sums

that it was contemplated that you were to receive therefor would be illegal."

The notice continued as follows:

"YOU ARE HEREBY NOTIFIED, therefore, that Dr. Prichard will not carry out the portion of said contract which calls for you to exercise any control over the above mentioned dental clinic in any manner, and the he will pay you no sums other than the $300 per month until the equipment in the sum of $36,000 is paid for, and that all sums paid under the contract to date, other than the $300 per month, will be credited on to the total purchase price.

"YOU ARE FURTHER NOTIFIED that the books of the Clinic are no longer open to your inspection or approval and that you are to remain away from the dental clinic and the employees therein, except for reasonable inspection of your properties therein located.

"In my opinion the contract is principally a legal contract and, therefore, the illegal portions which contemplate paying you a percentage for your managership can be deleted, and your managership is cancelled."

(Parenthetically, we find nothing in the contract to the effect that the percentage payments to Mrs. Conway were to be compensation for her managership. The contract very definitely states that the percentage of profits she was to receive were "payment for the going business herein contracted to be sold.")

Since the conclusion by Dr. Prichard that his contract with Mrs. Conway is illegal, is based on our recent decision in *State v. Boren, supra,* it becomes necessary to review our holdings in that case. We were unanimous in holding:

(1) That the legislature may, in the interests of the public health, specify that no one may practice dentistry without a license.

We held, by a divided court (seven to two):

(2) That the legislature can constitutionally declare that one who owns, maintains, or operates an office for the practice of dentistry, is practicing dentistry. Rem. Rev. Stat. (Sup.), § 10031-6 [P.P.C. § 501-11].

We were all agreed:

(3) That the defendants, Boren and Shepherd, neither of whom had a license to practice dentistry, did, under the

facts as set out in the findings of the trial court, own and operate an office for the practice of dentistry at 1909-1913 Westlake avenue, in Seattle.

It was our disagreement on proposition (2) which led to the dissent in that case.

We are not here concerned, as we were in the *Boren* case, with nonlicensed individuals who, having a chain of dental offices, were ostensibly selling one of them to a licensed dentist but were actually pocketing all the profits from the operation through bonus payments.

■ There was nothing unlawful in Mrs. Conway's ownership of the property and interests which she sold to Dr. Prichard, although, under our decision in the *Boren* case, she could not have employed anyone to take over her husband's practice and operate it for her. It cannot be gainsaid that she had the right to sell that which she owned, either for cash or on terms, and, if on terms, she had the right to protect her interests in any way consistent with the public policy of the state.

■ We come, then, to the question of whether the terms of her contract with Dr. Prichard are in violation of the public policy of the state, as declared by the legislature and as interpreted by this court in *State v. Boren, supra*. We have carefully examined the contract, and, so far as we can determine, it is a bona fide contract of sale calculated to protect and to benefit both parties, and none of the provisions of that contract brand it illegal or contrary to public policy. The fact that Mrs. Conway was to have a relatively large percentage of the net profits during the first five years does not establish that she owns, maintains, or operates an office for the practice of dentistry, but, rather, that she and Dr. Prichard had agreed upon a formula for arriving at a value of the "going business," which we conceive to be the good will of the established dental practice.

The two provisions of the contract which have given Dr. Prichard great concern are the ones which give Mrs. Conway (a) a percentage of the profits and (b) the right to be the business manager and to superintend the business man-

agement of the office. We have disposed of (a); with reference to (b), paragraph 7 of the contract, which we have heretofore quoted in full, recognizes a clear-cut distinction between "professional conduct and practice in said office," which was to be under the exclusive control of Dr. Prichard, and the business management of the office, which Mrs. Conway was to superintend.

It is common knowledge that many doctors and dentists, and certainly most clinics, leave the details of business management such as the keeping of business records, the issuing of statements, the collection of accounts, and the details of disbursements for supplies and equipment, to personnel employed for that purpose. The particular title of the individual or individuals who do that work is not material, and whether it be office manager, office secretary, or bookkeeper, we do not regard the handling of those details as constituting the practice of medicine or dentistry, although their capable performance may be essential to make that practice profitable. The fact that the same details are supervised by one who, instead of being an employee, is selling the practice under a conditional sales contract, does not of necessity constitute such ownership, maintenance, or operation of an office for the practice of medicine or dentistry as is contemplated by Rem. Rev. Stat. (Sup.), § 10031-6, although it could well be a factor requiring a closer scrutiny of the entire transaction to determine whether it is actually what it purports to be or, instead, is a scheme or subterfuge to violate the law.

We cannot say, from an examination of the contract, that Mrs. Conway's business management was to go beyond the details we have suggested as proper for nonlicensed personnel, and to be of such a character that it would constitute the practice of dentistry within the purview of the statute to which we have referred. It is our conclusion that if there has been any ownership, management, or operation of an office for the practice of dentistry by Mrs. Conway, it is the result of her conduct rather than anything inherent in the contract.

We now quote paragraphs IV to VIII, inclusive, and the prayer of the amended complaint:

"IV

"That the defendant [Mrs. Conway] has received, collected and retained to herself the payments made upon the purchase price of the business, the percentage-of-net-profits payments provided in said conditional sales contract for the defendant's management and control of said business, the accounts receivable arising during the term the plaintiff [Dr. Prichard] worked in said business and accruing by virtue of the plaintiff's skill and efforts; and that the defendant has refused to revise said contract and relinquish her management and control of said business, or either, so as to conform to law and effectuate the sale intended by the parties; and that the defendant has retained to herself the full ownership, management and control of said business, leasehold, fixtures, stock, and all else contracted to be sold, though fully aware of the mistake of the parties to said contract as to said provision for management and control, and the hardship upon the plaintiff.

"V

"That the defendant effectuated her control and management of said business by maintaining control of the finances, control of the books, control of the patients, and control over appointments of patients, and has refused to relinquish such control, or any of it, though demand therefor has been made by the plaintiff.

"VI

"That the plaintiff has made demand upon the defendant to relinquish control and management of said business, to reform the contract and purge it of its illegal provision, to return to the plaintiff the monies paid by the plaintiff upon the purchase price of said business, to account or turn over the accounts receivable to the plaintiff, or an equitable share thereof, or pay over the sums represented by said accounts receivable or an equitable share thereof; but that the defendant has refused to do any, all, or any combination of said things demanded.

"VII

"That by her management and control, as set out herein, and by her refusal to accede to the demands of the plaintiff, or any of them, the defendant made it impossible for the plaintiff to lawfully carry on his business, or to carry out the conditional sales contract entered into between the plaintiff and the defendant, or either, all without fault of the plaintiff

and contrary to the plaintiff's desire, and to the plaintiff's great loss and damage.

"VIII

"That as a direct result of said defendant's actions, and caused thereby, the plaintiff will lose such sums as he has already invested in the purchase of the properties, as set forth in 'Exhibit A,' all to the plaintiff's damage in the sum of $4,800.00, together with the outstanding credits due him on the books of his business, which the defendant refuses to allow him to collect, in the sum of $7,025.00.

"WHEREFORE, plaintiff prays that he be given judgment against the defendant in the sum of Eleven Thousand Eight Hundred Twenty-Five & No/100 ($11,825.00) Dollars, together with court costs and attorneys' fees as provided by law; and for such other and further relief as to the court may seem just and equitable."

■ If Dr. Prichard is entitled to any relief, it is not because the contract is illegal on its face, but because Mrs. Conway has, as alleged in paragraphs IV and V of the amended complaint, exercised a control over the business which constitutes in fact the management and operation of a dental office. Some of the conduct complained of in paragraph IV might well be within her rights under the provisions of the contract which were designed for her protection; but it is not necessary to analyze the allegations of that paragraph with particularity, as the allegations of paragraph V, that she

". . . effectuated her control and management of said business by maintaining control of the finances, control of the books, control of the patients, and control over appointments of patients . . . ,"

if true, clearly entitle Dr. Prichard to relief of some sort.

He does not appear to be concerned with the possibility of restraining Mrs. Conway from exercising control over patients or the appointments of patients, and from exercising any control or management other than supervision of the general recognized details of business management which any nonlicensed employee might handle, but, rather, seeks to treat the contract as terminated and to recover a monetary recompense. It is Dr. Prichard's position, as indicated

by his notice to Mrs. Conway and the allegations of his complaint, that she could receive no percentage of the profits, and that, so long as he paid her three hundred dollars a month, he was complying with all the legal provisions of their contract, and that he could deny her even an examination of the books.

It must be borne in mind that he does not allege, or even suggest, that this was not a bona fide sale, or that the sale was being used as a blind or pretext to enable Mrs. Conway to practice dentistry in contravention of our statute. (Parenthetically, if he did take such a position he might cut himself off from any opportunity to secure relief, as the parties would then be *in pari delicto*.) We repeat that there is nothing about the purchase price which Dr. Prichard agreed to pay, including the provision granting Mrs. Conway a percentage of the profits for a period of five years, that renders the contract illegal or contrary to public policy. In fact, it seems to us a very favorable contract for one who was making no capital investment.

■ We are in entire accord with the trial court that Dr. Prichard cannot recover on the theory that a portion of the contract is illegal and that he is entitled to recover all payments made by him under the illegal portion thereof and the value of the accounts receivable which were assigned to Mrs. Conway as security. His recovery, since he seeks no equitable relief, must be on the theory that Mrs. Conway's conduct so breached the contract as to warrant his abandonment of it, and his consequent damage.

■ We have held that when a court has jurisdiction and the plaintiff has set forth facts entitling him to some relief, a demurrer will not be sustained even though the prayer is for relief to which the plaintiff is not entitled. *Fransioli v. Thompson,* 55 Wash. 259, 265, 104 Pac. 278; *Dale v. Cohn,* 14 Wn. (2d) 214, 217, 127 P. (2d) 412, and cases there cited. As was said in *Damon v. Leque,* 14 Wash. 253, 44 Pac. 261:

"If a plaintiff sets forth facts constituting a cause of action and entitling him to some relief, he is not to be turned out of court because he has misconceived the nature of his remedial right."

The order of dismissal with prejudice is set aside and the cause remanded to the trial court with instructions to overrule the demurrer and to proceed with the case.

SCHWELLENBACH, C. J., BEALS, DONWORTH, and FINLEY, JJ., concur.