482 P.2d 446

**L. P. GRAHAM and Dorothy Graham, husband and wife, Appellants,**

v.

**James A. SHOOKE and Lois Shooke, husband and wife, Appellees.**

No. 10253–PR.

Supreme Court of Arizona,
In Banc.

March 17, 1971.

Rehearing Denied April 13, 1971.

Lesher & Scruggs by D. Thompson Slutes, Tucson, for appellants.

Hirsch & Pakula by Arthur L. Hirsch, Tucson, for appellees.

LOCKWOOD, Justice:

James A. Shooke, the plaintiff below, sued L. P. Graham for an accounting based upon an alleged partnership agreement. (The wives of the parties were joined as party plaintiff and defendant, respectively, but we hereafter refer to the parties only as plaintiff and defendant.) The trial court granted the relief requested, and the Court of Appeals affirmed. Opinion of the Court of Appeals vacated. Judgment reversed.

The facts in this case are as follows: James Shooke and L. P. Graham met in 1948 or 1949. Both were employees of the Broadway Pet Hospital in Tucson. Defendant Graham was a doctor of veterinary medicine, who had sold his practice in Pennsylvania and moved to Arizona for health reasons. He became a licensed doctor of veterinary medicine in Arizona. Plaintiff was employed as a kennel man and veterinary technician. In 1949, Graham wished to set up his own hospital. He received a loan of $5,000 from his mother, and together with the money he received from the sale of his Pennsylvania practice, purchased property on Speedway Avenue in Tucson, in the name of himself and his wife. At no time was the property listed in the name of Shooke. The pet hospital was denominated the Graham Pet Hospital. Graham had asked two other employees of the Broadway Hospital to join him in his venture, but only Shooke actually left the Broadway Hospital.

Plaintiff alleged it was at this time that the partnership agreement occurred.

Graham invested all of the money in the facilities. Shooke claimed he was to be in charge of the back half of the hospital, i. e., the kennel, and was to receive 40% of the profits. He alleged Graham was to do the front, the customer relations, and the veterinary work, and receive 60% of the profits. Shooke received a salary of $50 per week, which was later increased to $125 per week. Graham helped Shooke make the down payment on his house and automobile. At no time was a partnership tax return ever filed and Shooke filed his own returns as an employee of the Graham Pet Hospital.

In 1957 Graham and another doctor, one Van Aiken, formed a corporation to run the pet hospital. Shooke did not take part in any of the discussions, nor did he protest. The defendant assured the plaintiff that the addition of Dr. Van Aiken would not change his position. The property was transferred to the corporation. Fifty per cent of the shares were owned by Graham and his wife and fifty per cent by the other doctor and his wife. After six months the Grahams bought out the second doctor.

Plaintiff testified that as the hospital became successful, he started doing a little treating of the animals. He and several employees testified that after two years plaintiff did the bulk of the animal surgery. Graham also admitted that the plaintiff did animal surgery.

Defendant Graham claims that if there was any such partnership agreement, it was illegal and cannot be enforced. With this contention we agree.

During the time in question, A.R.S. § 32–2244[1] provided:

"A. A person is guilty of a misdemeanor who:

\* \* \* \* \* \*

"4. Practices veterinary medicine or surgery without a license and registration \* \* \*."

The general rule in accounting of partnership is that such an accounting will not be granted where the subject matter of the partnership is illegal, and the partners are in pari delicto, that is, equally at fault. Brand v. Elledge, 89 Ariz. 200, 360 P.2d 213 (1961); 32 A.L.R.2d 1345; 68 C.J.S. Partnership § 7(a).

Brand was a case which fell within an exception to the general rule, i. e. that where one party is only slightly guilty or has acted in good faith, the parties are not in pari delicto and the accounting may be enforced. We do not have such a situation here. The plaintiff testified that he began to treat animals "as the hospital became successful," and that he did the greatest portion of the surgery on the animals after two years although he was not licensed to practice veterinary medicine in Arizona. Defendant admitted that plaintiff performed surgery. This conduct was clearly in violation of A.R.S. § 32–2244. Plaintiff's conduct, acquiesced in by defendant, was not that of one or two mere isolated transactions, or a good faith effort to comply with the law, but a continuation of the illegal practice for over ten years. The equitable doctrine that he who comes into equity must come with clean hands is the basis of refusal of a court to enforce such a contract.

The action below was tried before the court, with an advisory jury. The sole interrogatory submitted to the jury was: "Do you find, under the law and the evidence, that a partnership existed between the parties?" The advisory jury answered this question in the affirmative. However, the trial court did not submit to the jury the question of whether the partnership was illegal, and in fact refused to give the jury the defendant's requested instruction on the illegality issue. When a court makes use of an advisory jury, the court is still responsible for the ultimate questions of fact and law. Milam v. Milam, 101 Ariz. 323, 419 P.2d 502 (1966); Bohmfalk v. Vaughan, 89 Ariz. 33, 357 P.2d 617 (1960); 16 A.R.S. Rule 39(*l*).

1. Since 1967 these provisions by legislative amendment appear in § 32–2238, A.R.S.

The trial court determined that the partnership was not illegal apparently on the basis of an exception to the veterinary licensing requirements. One is for the treatment of one's own animal, the other is treatment at the discretion of an employer, of the employer's animals, according to A.R.S. § 32–2221, which, during the years in question, read in part as follows:

"A person treating an animal belonging to himself or his employer while in the regular service of such employer, or the animal of another without compensation therefor."

However, under the facts the plaintiff does not fall within this exception. Since the alleged partners were in pari delicto, the court in equity should have refused to decree an accounting.

Appellant raised questions of the statute of limitations and laches, but since the case must be reversed for the reasons stated above, it is unnecessary to answer them.

Opinion of the Court of Appeals, 13 Ariz. App. 141, 474 P.2d 960 (1970) vacated and judgment of the trial court reversed.

STRUCKMEYER, C. J., HAYS, V. C. J., and UDALL and CAMERON, JJ., concur.