[No. 4478-1-II.    Division Two.    July 15, 1982.]

RED DEVIL FIREWORKS COMPANY, *Respondent,* v. JAMES SIDDLE, ET AL, *Appellants.*

522

*Don McGavick,* for appellants.

*George Marsico,* for respondent.

PETRICH, A.C.J.—Defendants, James Siddle and his wife Judy, appeal a judgment for unpaid amounts claimed on a delivery and acceptance of fireworks. Two primary issues are presented for review. The first is whether an agreement for the sale of dangerous fireworks to an Indian licensed by the Puyallup Indian Tribe, but not by the State of Washington, is unenforceable because of violation of the State Fireworks Law (RCW 70.77). In the event the contract is unenforceable because of noncompliance with state laws, the second issue is whether equitable principles of unjust enrichment permit recovery of the fair value of dangerous fireworks delivered and accepted.

We resolve the issues against the plaintiff and for the defendants and reverse the judgment.

Federal regulations allow the interstate transport of fireworks that Washington has designated as "dangerous." 16 C.F.R. § 1500.17(a)(8). Washington, however, until recently, strictly regulated the transfer of dangerous fireworks within its border.

> Prohibited transfers of dangerous fireworks. The transfer of dangerous fireworks ownership whether by sale at wholesale or retail, by gift or other means of conveyance of title or the delivery of any dangerous fireworks to any person in the state who does not possess and present to the seller for inspection at the time of transfer a valid license and permit, where such permit is required to purchase, possess, transport, or use dangerous fireworks, is prohibited.

RCW 70.77.480.

The Puyallup Indian Tribe issued defendant James Siddle a license, effective June 10, 1977 to June 10, 1978,

thereby allowing him to engage in the retail sale of fireworks in areas under the jurisdiction of the Tribe. A subsequent license signed May 5, 1978, was effective from May 15 to July 15, 1978. Defendants, however, did not possess a state license.

Because it was claimed that the State Fireworks Law did not apply to Indian trust land, plaintiff began negotiations with defendants. The proposal was for defendants to gather orders for dangerous fireworks from other Indians in Washington, to receive the fireworks from plaintiff in one transaction, to deliver the fireworks as per the orders, and to retain a 15 percent commission. Defendants soon had orders for approximately $50,000 worth of fireworks. During this period of negotiations, defendants requested plaintiff to fill several orders. On March 18, April 29, and May 4 of 1978, defendants subsequently picked up these orders at plaintiff's warehouse. This warehouse was not located on trust land. The list price of the filled orders amounted to $6,764.50. Defendants paid $108, and their commission amounted to $1,014.68, thus leaving an amount due to plaintiff of $5,641.82. Soon afterward, however, negotiations ended when defendants refused to accept a single lump sum delivery of the goods at their place of business on Puyallup trust land.

Over this same general time period, plaintiff had been in touch with various state officials regarding the propriety of selling dangerous fireworks to the Indians. On March 20, 1978, the Attorney General's office sent plaintiff a letter communicating the belief that such sales were illegal. On June 14, 1978, the State Fire Marshal, who administers the State's fireworks statutes, wrote a similar letter to plaintiff.

Plaintiff brought suit to recover $5,641.82 owing for the unpaid fireworks. Defendants made the affirmative defense that because any sale of the delivered fireworks was illegal, any underlying agreements of goods sold and delivered were unenforceable. At the same time, defendants counterclaimed; they alleged that they had made a valid contract with plaintiff whereby plaintiff would deliver $50,000 worth

of fireworks from which defendants would derive a seller's commission of $7,500. Because plaintiff breached the contract, defendants claimed $800 as the amount still owing.

The court concluded that plaintiff should recover for the unpaid fireworks actually delivered and accepted on two grounds: first, the sale was not an illegal transaction because the defendants' license from the Puyallup Tribe satisfied the statutory requirements, and, second, even if it was illegal, quantum meruit allowed recovery. The court essentially denied defendants' counterclaim by concluding that negotiations for the entire $50,000 worth of fireworks had never ripened into a contract.

Defendants' appeal raises two basic issues: whether the sale of the fireworks actually delivered was an illegal transaction; and whether quantum meruit would nevertheless allow recovery.

Before discussing these issues, however, we note that a contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of a contract. RCW 62A.2–204(1). Moreover, an oral contract for more than $500 is enforceable with respect to goods which have been received and accepted. RCW 62A.2–201(3)(c). Invoices indicate that price and quantity terms were agreed upon when defendants picked up the orders of fireworks from plaintiff's warehouse. Consequently, with respect to the delivered orders and without regard to the question of legality, a contract existed between the two parties for such orders.

In order to determine whether this agreement was illegal, we must first consider the efficacy of RCW 70.77.480 under the facts before us and then ask whether any violation occurred.

RCW 37.12.010 established state criminal and civil jurisdiction over Indians and Indian territory, except that such jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States. *Wash-*

*ington v. Confederated Tribes*, 447 U.S. 134, 65 L. Ed. 2d 10, 100 S. Ct. 2069 (1980), and *Washington v. Confederated Bands & Tribes of Yakima Indian Nation*, 439 U.S. 463, 58 L. Ed. 2d 740, 99 S. Ct. 740 (1979), have upheld RCW 37.12.010 as constitutional. RCW 70.77.480 is therefore operative vis–a–vis any Indian who buys dangerous fireworks outside trust land without the appropriate license and permit, where required. Because both parties admitted during argument that plaintiff's warehouse is outside Puyallup Indian trust land, and that defendants picked up the fireworks at plaintiff's warehouse, this statute is operative for our purposes herein.

Plaintiff attempts to argue that this transaction is one in interstate commerce, and that RCW 70.77.480 is thus inapplicable. No authority is given to support this argument. Finding no basis to support it ourselves, we therefore decline to accept it.

At a minimum, RCW 70.77.480 requires that one may only transfer dangerous fireworks to one holding a license issued by the State Fire Marshal.[1] *See* RCW 70.77.170. Defendants neither possessed nor presented such license to plaintiff, and Mr. Siddle's license from the Puyallup Indian Tribe was no substitute.

Both parties, therefore, violated RCW 70.77.480. Because this violation is a misdemeanor, the above agreement is illegal.[2] RCW 70.77.540. Moreover, the control of dangerous fireworks is for the obvious protection of the public, and any violation of such controlling measure is against the public policy of promoting the health and safety of this state's citizens. Washington's fireworks law is a prohibitory rather than a regulatory law; its intent is to pro-

---

[1]Local permits may also be required.

[2]Similarly, even if negotiations for the sale of $50,000 worth of fireworks had ripened into a contract, such agreement would also be illegal. Thus, whatever the merits of defendants' counterclaim that such a contract had been made, its denial was sustainable on grounds within the pleadings and proof. *See, e.g., Vance v. Seattle*, 18 Wn. App. 418, 569 P.2d 1194 (1977).

hibit the general possession and/or sale of dangerous fireworks and is not primarily a licensing law. *United States v. Marcyes,* 557 F.2d 1361 (9th Cir. 1977).

■ As a general rule, the courts of this state will not enforce agreements which are illegal and contrary to public policy. *Sienkiewicz v. Smith,* 30 Wn. App. 235, 633 P.2d 905 (1981); *Golberg v. Sanglier,* 27 Wn. App. 179, 616 P.2d 1239 (1980). Rather, the courts will leave the parties where it finds them. *Hederman v. George,* 35 Wn.2d 357, 212 P.2d 841 (1949); *Reed v. Johnson,* 27 Wash. 42, 67 P. 381 (1901).

Exceptions to this general rule based on equitable principles exist, however, and plaintiff cites *St. John Farms, Inc. v. D.J. Irvin Co.,* 25 Wn. App. 802, 609 P.2d 970 (1980), as supportive of the court's award. There, unjust enrichment would have resulted if the dealer had been allowed to keep the delivered lentils without paying for them. Significantly, the farmers reasonably assumed that the dealer had complied with all the statutory prerequisites to doing business as a dealer in agricultural products. Also, the statute's purpose in protecting the public would not be furthered from denying a recovery to the plaintiff. The court, therefore, ordered the dealer to pay for the delivered lentils.

Quite clearly, if the law does not aid plaintiff in the instant situation, defendants will reap an unjust benefit. Such, however, is usually the case with illegal contracts because the court takes into account the interests of society and the State, which demand the complete suppression of illegal agreements. *Hederman v. George, supra.*

The exception in *St. John Farms, Inc.,* furthermore, was based on the two other previously mentioned considerations. Here, by contrast, both parties were aware of defendants' lack of a proper license, and plaintiff was most certainly aware of the statute in question. The filling of defendants' order on April 29 and May 4 came after the March 20 letter from the Attorney General's office advising plaintiff that it could not sell dangerous fireworks to the Indians. At this point, according to a finding of fact, unchallenged by plaintiff, it was operating in jeopardy.

Consequently, plaintiff was not justifiably ignorant of particular regulations which only the defendants knew. Also, denial of recovery in this case will further the objective of the fireworks act to maintain strict control and supervision of dangerous fireworks by the State of Washington so as to avoid injury to the public.

We thus reverse the judgment below and order that the parties be left in the positions where the court first found them.

PETRIE, J., and JACQUES, J. Pro Tem., concur.