[No. 17444–4–I.  Division One.  June 1, 1987.]

TITO MORELLI, ET AL, *Appellants,* v. MIKE EHSAN,
ET AL, *Respondents.*

*Jeffrey Dudley, Thomas A. Sterken,* and *Cartano, Botzer & Larson,* for appellants.

*James R. Spady, Don P. Badgley,* and *Bogle & Gates,* for respondents.

SCHOLFIELD, C.J.—Tito Morelli assigns error to the trial court's finding that his participation as a partner in the operation of a medical clinic constituted the unlicensed practice of medicine, and therefore, he had no legally cognizable interest in the clinic. We affirm the trial court in part and reverse in part.

FACTS

In November 1980, Tito Morelli, Dr. Mike Ehsan and a certified registered nurse, Anne Anholm, entered into a limited partnership agreement to establish and operate the Sunrise Emergency and Family Care Clinic in Everett, Washington.[1] The clinic was to provide minor emergency treatment and health care to the general public on an outpatient basis. Morelli told Ehsan that he had consulted his lawyers and had been assured it was legal for a physician and a nonphysician to operate a medical clinic as partners.[2]

Under the agreement, Morelli and Ehsan became co-general partners, sharing equally in profits and losses. The agreement provided that, in addition to their share of profits, Morelli and Ehsan could receive a salary for services rendered as employees of the partnership. The agreement also provided that, as general partners, Morelli and Ehsan would have equal rights in the management of the partnership business, and further defined Morelli's areas of

---

[1]Anholm subsequently sold her interest to Ehsan and is not a party to this action.

[2]Morelli's law firm claims to have been told by an assistant attorney general that the proposed partnership would be legal.

responsibility as "Director of Operations" and those of Ehsan as the "Medical Director" of the clinic. The clinic also employed a medical staff, including licensed physicians, who were paid on an hourly basis.

For most of the next 3 years, the clinic operated at a loss, finally showing a small profit in 1984. The partners were obliged to advance additional funds to keep the business going during that time. Morelli's additional contributions to the clinic, totaling $75,000, were later characterized as loans and evidenced by a series of promissory notes, signed by Morelli and Ehsan as comakers.

During the latter part of 1983, the partners began to have a falling out, and in January 1985, Morelli petitioned the court for a dissolution of the partnership and an accounting. Ehsan moved to dismiss Morelli's complaint, arguing that the partnership agreement was illegal and void.

The trial court granted summary judgment for Ehsan, holding that Morelli's participation in the partnership constituted the unlicensed practice of medicine in violation of former RCW 18.71.020, and as a result, he had no legally cognizable interest in the assets, profits or management of the clinic. The court permanently enjoined Morelli from interfering in any way in the operation of the clinic. Ehsan was ordered to assume all the assets and liabilities of the business, but was held not to be liable for any of the funds contributed by Morelli to the partnership. From the trial court's judgment, Morelli appeals.

UNLICENSED PRACTICE OF MEDICINE

Morelli contends that, since no Washington statute or regulation prohibits his involvement as a partner in the clinic and since he had no involvement in the direct care or treatment of patients, he was not practicing medicine without a license and the partnership was not illegal.

We begin by defining the scope of our review in this case. When reviewing a summary judgment, the appellate court engages in the same inquiry as the trial court. *Hartley v. State,* 103 Wn.2d 768, 698 P.2d 77 (1985). Summary judg-

ment is appropriate only when

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR 56(c); *Hartley,* at 774.

█ In determining whether a genuine issue exists as to any material fact, "[t]he court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party." *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Since the instant case was decided on summary judgment against Morelli, we will assume for the purposes of this opinion, although the matter is disputed, that Morelli was only involved in the purely business aspects of the partnership and that Ehsan had sole responsibility and authority for all medical aspects of the clinic.

█ The common law rule in Washington has been that "neither a corporation nor any unlicensed person or entity may engage, through licensed employees, in the practice of the learned professions". *State ex rel. Standard Optical Co. v. Superior Court,* 17 Wn.2d 323, 328, 135 P.2d 839 (1943). In *Standard Optical,* the court followed the common law rule, holding that a corporation was practicing optometry without a license merely by maintaining an office where it employed a licensed optometrist, even though the corporation exercised no control over the professional judgment of the optometrist or the exercise of his professional discretion. *Standard Optical,* at 326.

In *State v. Boren,* 36 Wn.2d 522, 219 P.2d 566, 20 A.L.R.2d 798, *appeal dismissed,* 340 U.S. 881 (1950), the court found that lay copartners, who under the guise of a sales agreement actually owned and operated a dental office, were themselves engaged in the unlicensed practice of dentistry. *Boren,* at 524. The court relied on the statute which then, as now, defined the practice of dentistry to include maintaining or operating an office for the practice

of dentistry. Rem. Rev. Stat. § 10031–6 (Supp. 1943); RCW 18.32.020.

In upholding the statute as a constitutional exercise of the State's police power, the court quoted with approval *Ezell v. Ritholz,* 188 S.C. 39, 198 S.E. 419 (1938), in part as follows:

> "If such a course were sanctioned the logical result would be that corporations and business partnerships might practice law, medicine, dentistry or any other profession by the simple expedient of employing licensed agents. And if this were permitted professional standards would be practically destroyed, and professions requiring special training would be commercialized, to the public detriment.

*Boren,* at 528.

Morelli cites *Prichard v. Conway,* 39 Wn.2d 117, 234 P.2d 872 (1951) in support of his position that the partnership at issue was legal. In *Conway,* a widow sold her deceased husband's dental practice to a Dr. Prichard. In addition to a monthly payment, Conway was to receive more than one–half of the net profits of the practice for 5 years, and was to retain title to the tangible assets and a security interest in the accounts receivable until full payment of the contract. In this way, Dr. Prichard, who lacked the money for a down payment, took over the established dental practice without any investment on his part.

The conditional sales agreement also provided that:

> "It is further agreed that the doctor shall spend his whole time to the professional care of the office and shall have exclusive control over professional conduct and practice in said office and that the seller shall have the right to be the manager of said business and shall have the right to superintend the business management of the office."

*Conway,* at 119. Some months after the conditional sales agreement was entered into, the decision in *State v. Boren, supra,* was filed. Dr. Prichard, conceiving that, under the terms of that decision, certain provisions of his contract with Conway were illegal, informed her that he intended

not to honor their agreement, save the $300 monthly payment provision.

In distinguishing *Boren,* however, the court noted the clear–cut distinction in the conditional sales agreement between the professional conduct and practice in the office, which was under the exclusive control of Dr. Prichard, and the business management of the office, which Conway was to superintend. *Conway,* at 122. The court determined that Conway's business management under the agreement was not to go beyond details which otherwise could be legally performed by nonlicensed personnel in a dental office. Thus, the court concluded, the contract was not illegal since it did not allow for conduct that would constitute the practice of dentistry within the purview of the statute. *Conway,* at 122.

Relying on *Conway,* Morelli argues that his performance of the business functions of an office manager under the limited partnership agreement did not constitute the practice of medicine. Morelli also points out that the statute defining the practice of medicine, RCW 18.71.011, does not expressly include the ownership, maintenance or operation of an office, as does the dental statute, the previous codification of which was involved in both *Boren* and *Conway.*[3]

However, despite the lack of analogous language in both statutes, it would be incongruent to conclude that the Legislature intended to single out the dental profession within which to proscribe a particular form of "unlicensed practice". The common law prohibition against such an arrangement in any of the learned professions cannot be overlooked. In our view, the court in *Conway* was merely avoiding the harsh and arguably unjust consequences that would have followed from an avoidance of the agreement under the peculiar facts presented in that case. Conse-

[3]RCW 18.71.011 provides in pertinent part:
"A person is practicing medicine if he does one or more of the following:
"(1) Offers or undertakes to diagnose, cure, advise or prescribe for any human disease, ailment, injury, infirmity, deformity, pain or other condition, physical or mental, real or imaginary, by any means or instrumentality;"

quently, we find Morelli's reliance on *Conway* unpersuasive. We are likewise not persuaded by Morelli's argument based on the Idaho Supreme Court case of *Worlton v. Davis,* 73 Idaho 217, 249 P.2d 810 (1952). To the extent, if any, that *Davis* is inconsistent with our interpretation of Washington law, we decline to follow it.

In addition, other factors convince us that a partnership that includes a lay partner cannot legally operate a medical clinic under any circumstances. In 1969, the Legislature enacted The Professional Service Corporation Act, RCW 18.100, granting authority for the corporate practice of professions such as law, medicine and dentistry, provided the corporate shareholders are all individuals who themselves are duly licensed or authorized within this state to render the same professional service as the corporation. RCW 18.100.030(2), .050. Thus, it is now permissible for a group of licensed physicians to organize and become shareholders of a professional corporation for profit under the provisions of RCW Title 23A, for the purpose of rendering professional services.[4]

Thus, the act creates a narrow statutory exception to the general common law rule prohibiting a corporation from engaging in the practice of a "learned profession" through licensed employees. *See State ex rel. Standard Optical Co. v. Superior Court, supra.* It would be anomalous if, by simply structuring an organization as a limited partnership, rather than a corporation, lay businessmen could participate in a business that provided the same professional services.

Morelli argues that this act demonstrates that, while the Legislature could have statutorily prohibited all forms of lay ownership in professional businesses, it chose only to prohibit lay participation in a professional services corporation. He argues that the joint and several liability of partners distinguishes a partnership from a corporation.

This argument, however, ignores the fact that the profes-

----

[4]AGLO 18 (1980).

sional services corporation is a statutorily created exception to the existing common law rule otherwise prohibiting such ownership by a corporation or any other unlicensed person or entity. *State ex rel. Standard Optical Co. v. Superior Court, supra.* It also ignores the fact that each member of a professional services corporation remains responsible for his or her own negligence or misconduct, as well as that of any person under his or her direct supervision and control. RCW 18.100.070. Thus, the act preserves the traditional responsibility of the professional practitioner directly to his or her patient or client. *See State v. Boren, supra* at 528.[5]

In summary, we conclude that a partnership including a lay partner cannot legally operate a medical clinic under any circumstances. Hence, the partnership agreement in the instant case was illegal as a matter of law. Having so concluded, we turn to the question of whether Morelli was therefore precluded from seeking affirmative relief in the trial court.

AVAILABILITY OF AFFIRMATIVE RELIEF

Morelli contends that, since the partnership agreement was not entered into with any unlawful intent or purpose, denying him affirmative relief unjustly enriches Ehsan. The trial court's judgment places full ownership of all partnership assets in Ehsan, free and clear of any claim by Morelli.

As a general rule, the courts will not enforce an illegal agreement where the parties are equally at fault, but rather, will leave the parties where it finds them. *Red Devil Fireworks Co. v. Siddle,* 32 Wn. App. 521, 526, 648 P.2d 468 (1982). Thus, where a partnership is formed to carry out an

---

[5]We also note that since the trial in this case, the Legislature has adopted the Uniform Disciplinary Act, RCW 18.130, with the express purpose of standardizing disciplinary procedures for the licensed health and health–related professions, including medicine. RCW 18.130.010, .040(2)(b)(vii); RCW 18.71.019.

The act proscribes unlicensed practice, defined as: "Practicing a profession or *operating a business* identified in RCW 18.130.040 without holding a valid . . . license to do so". (Italics ours.) RCW 18.130.020(5)(a). A "license" is further defined as "permission to engage in a health profession . . . granted to those individuals who meet prerequisite qualifications to perform prescribed health professional tasks". RCW 18.120.020(7), 18.130.020(9).

illegal business or to conduct a lawful business in an illegal manner, the courts will refuse to aid one of the parties against the other in a suit for a dissolution and accounting. *Williams v. Burrus*, 20 Wn. App. 494, 581 P.2d 164 (1978).

Exceptions to this rule based upon equitable principles exist, however. *Red Devil*, at 526. For example, where the illegality of the transactions is due to facts of which one party is justifiably ignorant while the other party is not, the ignorant party may recover for any performance rendered. *St. John Farms, Inc. v. D.J. Irvin Co.*, 25 Wn. App. 802, 609 P.2d 970 (1980). Similarly, equity will aid one party to an illegal contract if he is less guilty than the other party and has been deliberately wronged by the other party. *See Brand v. Elledge*, 89 Ariz. 200, 360 P.2d 213 (1961) and cases cited therein.

However, neither the general rule nor its exceptions apply to the facts in the case at bar. The general rule assumes that the parties to the illegal transaction both intended to violate the law, and therefore, the court will not aid them in their illegal purpose. *See, e.g., Red Devil Fireworks Co. v. Siddle, supra* (where the parties had knowingly entered into a contract for the illegal sale of dangerous fireworks, equity would not permit the seller to recover for the fireworks delivered). While it could be argued that both parties were equally culpable in the illegal transaction—Morelli for the unlicensed practice of medicine and Ehsan for aiding and abetting the unlicensed practice of medicine—it appears that both acted in good faith and without any intent to violate the law. Morelli acted upon the advice of legal counsel, and Ehsan, in turn, relied upon Morelli. The general rule does not address the situation where, as here, both parties, although equally at fault, were also equally innocent of intentional wrongdoing.

For similar reasons, we cannot conclude that one party in this case was more or less at fault than the other so as to apply an exception to the general rule. Although Ehsan relied upon Morelli's representations as to the legality of their arrangement, Ehsan is responsible for knowing the

standards of practice of his own profession. We note also that the trial court did not find one party more culpable than the other.

■ In conclusion, since neither party intended to violate the law and neither party was more or less at fault than the other, we see no justification for a result that rewards Ehsan and punishes Morelli. The purpose of the prohibition of the unlicensed practice of medicine is served by terminating the partnership. Furthermore, *no good purpose is served by denying Morelli the aid of the courts in recovering whatever portion of the partnership assets are due him.*[6]

Accordingly, we remand this case to the trial court to conduct a hearing and receive whatever evidence it deems relevant and necessary for a dissolution of the partnership and an accounting, and distribution of the net assets on an equitable basis.

WEBSTER, J., concurs.
GROSSE, J., concurs in the result.

After modification, further reconsideration denied July 7 and 29, 1987.

Review granted by Supreme Court November 4, 1987.

---

[6]Our decision that Morelli is not denied the aid of the courts in dissolving the partnership makes it unnecessary for us to address Morelli's argument that the promissory notes, evidencing his loans to the partnership, are valid and enforceable because they are collateral to and severable from the illegal partnership.