[No. 13182.   Department One.   March 17, 1916.]

HUGH McGINLEY *et al.*, *Respondents*, v. MARY J. CANNON *et al.*, *Appellants.*[1]

MORTGAGES—ABSOLUTE DEED AS MORTGAGE—EVIDENCE—SUFFICIENCY. An absolute deed of a half interest in real estate from M. to C. who were equal partners in the property, for an express consideration of $26,200, is shown to have been intended as a mortgage for advances made by C. to M., where it appears that, two years later, the parties had a settlement, and C. agreed to convey to M. a half interest in the property upon payment of $17,200, with interest, the contract providing that meanwhile they should be tenants in common and that upon the death of either the survivor should have the right to purchase the half interest belonging to the estate at the appraised value, it further appearing that one purpose of the original deed was to permit C. to borrow money on the property and to prevent M. from incumbering it.

TENANCY IN COMMON—LEASE TO COTENANT—LIABILITY FOR RENT—TITLE—MERGER. Where a tenant in common, holding the full legal title, made a lease and afterwards purchased the lease on his own account and thereafter held exclusive possession under the lease, accounting for the stipulated rents during his lifetime, the lease was not merged, and his estate, holding over, is properly charged with the rents stipulated in the lease.

Appeal from a judgment of the superior court for King county, Albertson, J., entered July 21, 1915, in favor of the plaintiffs, in an action to determine the ownership of real property and for an accounting, tried to the court.   Affirmed.

*William Martin* and *Myers & Johnstone*, for appellants.

*Farrell, Kane & Stratton* and *Preston & Thorgrimson*, for respondents.

MOUNT, J.—This action was brought by the plaintiffs, claiming to be the owners of a one-half interest in certain real estate in Seattle; and for an accounting for rents, issues, and profits of the property after the year 1906.   The case was tried to the court and resulted in a decree to the effect

[1]Reported in 155 Pac. 1047.

that the plaintiffs were the owners of an undivided one-half interest in the property, subject to a mortgage of $16,000, after the payment by the plaintiffs to the defendants of the sum of $9,012.41, which the court found was owing from the plaintiffs to the defendants. The defendants have appealed from that judgment.

The facts are, in substance, as follows: Prior to the year 1902, the plaintiff Hugh McGinley and John Cannon, now deceased, were partners, mining in Alaska. This mining partnership had been successful. Both partners came to Seattle in the year 1902 and purchased parts of two lots at the southeast corner of Fourth avenue and Yesler Way, in the city of Seattle, for $22,500. They thereupon constructed a three-story building upon this property. The plaintiffs claim that the building cost $70,000; and the defendants claim that it cost about $45,000. The partners borrowed certain sums of money which were expended in the construction of the building. The building was completed, and thereafter, in March, 1903, Mr. McGinley returned to Alaska for the purpose of mining upon the partnership account. He took with him about $800 of partnership funds. After he had been in Alaska a short time, he drew upon Mr. Cannon in Seattle for the sum of $5,000. This money was sent to Mr. McGinley by Mr. Cannon. About a month later, Mr. McGinley again drew upon his partner in Seattle for $10,000. This money was also sent by Mr. Cannon. While Mr. McGinley was in Alaska, Mr. Cannon had charge of the building which had been constructed in Seattle. He collected the rents and paid the bills against the property. It is conceded that Mr. McGinley lost the money which had been sent to him in Alaska. Mr. Cannon, becoming anxious for fear the Seattle property would become incumbered, sent a deed to Mr. McGinley to be executed, conveying McGinley's interest in the property to Mr. Cannon. This deed was executed and returned to Mr. Cannon. At the time the deed was executed, the consideration for it was left blank. After

it was received by Mr. Cannon, he caused to be inserted $26,200 as the consideration for the deed. The deed was thereupon recorded in King county.

Afterwards, in the year 1906, upon Mr. McGinley's return to Seattle from Alaska, a settlement was had between the partners, and a contract was entered into as follows:

"This agreement made and entered into at Seattle, Washington, by and between John Cannon, party of the first part, and Hugh McGinley, party of the second part:

"Witnesseth: That said party of the first part does, for and in consideration of the amount, and the covenants and promises hereinafter stated grant, bargain, sell and convey unto the said party of the second part, and his heirs only an undivided one half ($\frac{1}{2}$) interest in and to the west one-half ($\frac{1}{2}$) of lots one (1) and two (2) in block thirty-six (36), D. S. Maynard's plat of the town (now city) of Seattle, according to the plat thereof now on file in the auditor's office of King county, Washington.

"The conditions for and the condition upon which the foregoing conveyance shall become effective and pass title to the said undivided one-half interest in said property from the said party of the first part to the said party of the second part are as follows, to-wit:

"(1) That said party of the second part shall pay to said party of the first part the sum of seventeen thousand two hundred ($17,200) dollars, at the rate of at least one thousand ($1,000) dollars per year, with interest thereon at the rate of 6% per annum until the full amount of said sum of seventeen thousand two hundred ($17,200) dollars has been fully paid.

"(2) That said party of the second part is not to file or record this agreement, except in case of the death of the said party of the first part; and that the name of the said party of the second part shall not appear of record as owning any interest in said described property until the termination or expiration of this agreement, except in case of the death of the said party of the first part prior thereto.

"(3) That this contract and agreement is not transferable, and that the aforesaid interest contemplated to be conveyed by this agreement shall not in any manner be incumbered, mortgaged, sold or assigned under any circumstances,

and any attempt so to do on the part of the party of the second part shall constitute a breaking and violation of this agreement and a total failure of consideration therefor, in which event this agreement shall become null and void, and no title or interest of any character or kind shall be transferred or conveyed or pass from said party of the first part to the said party of the second part by this contract or agreement, and the same shall become null and void and to the same effect as though the same had never been executed and leave the title to the whole of said property in the said party of the first part, his heirs and assigns.

"(4)     It is further hereby mutually agreed, that in case of the death of the said party of the second part that his said undivided one-half interest in said property shall descend to his heirs, or pass to the legatees under his last will and testament, subject, however, to the payment of the said sum of seventeen thousand, two hundred ($17,200) dollars, with interest thereon as aforesaid.

"(5)     It is hereby further mutually agreed that the said party of the first part shall have the right to grant, bargain, sell, and convey the whole of the aforesaid property to the same effect as though this agreement had not been entered into, in which event said party of the first part hereby agrees to account and pay to said party of the second part from any amount realized from the sale of the same one-half of the net amount received, less the whole or such part of the said sum of seventeen thousand two hundred ($17,200) dollars as shall remain unpaid by said party of the second part to said party of the first part at the time at which said sale is made.

"(6)     It is hereby further mutually agreed that in case of the death of either of the parties to this agreement, that the survivor shall have the right to purchase the interest of the other party by paying to his executors, administrators, heirs, or legatees under his last will and testament the appraised value of said one-half interest in said property.

"(7)     This agreement and the interest of the parties hereto in and to the west one-half (½) of lots one (1) and two (2) block thirty-six (36) D. S. Maynard's plat of the town (now city) of Seattle, King county, Washington, shall be construed and held to be tenants in common and their in-

terest therein to pass to their respective heirs, or under their last will and testament to the legatees thereof.

"In Witness Whereof said parties have hereunto set their hands and seals this 3rd day of February, A. D. 1906."

This instrument was duly signed and acknowledged.

Thereafter Mr. Cannon had the complete management and control of the property. In the fall of that year Mr. Cannon leased the hotel portion of the building, including a room which was used for a saloon, to a Mr. Sheehan, for a term of five years, at the rate of $6 per month per room (there were some eighty-two rooms in the building), and $100 per month for the room to be used for a saloon. This lease was made with the consent of Mr. McGinley. At the time this lease was made, Mr. Cannon and Mr. Sheehan formed a partnership to operate the hotel and the bar. This partnership continued the operation of the hotel under the lease until Mr. Sheehan's death in the year 1909. After Mr. Sheehan's death, Mr. Cannon purchased from his estate his interest in the lease and the furniture which that partnership then owned in the hotel and continued to operate the leased building in the same way it had been previously operated by himself and Mr. Sheehan. After Mr. Sheehan's death, the rents were charged as before, and accounted for by Mr. Cannon.

Thereafter, in March, 1912, Mr. Cannon died. After his death, his executors rendered a statement of the rents on the same basis which had been paid by Mr. Cannon during his lifetime. After Mr. Cannon's death, his executors denied that Mr. McGinley had any interest in the property, and claimed the whole thereof as belonging to Mr. Cannon's estate. Thereupon this action was brought.

The appellants argue that the court erred in adjudging Mr. McGinley to be the owner of an undivided one-half interest in the property. The deed which was executed by Mr. McGinley to Mr. Cannon in the year 1903 purports upon its face to be an absolute deed for a consideration of $26,200. It is argued by the appellants that, if this deed was a trust

deed, the trust was an express trust and cannot be proven by parol. We need not enter into a discussion whether the deed created an express trust. We think it is plain that the contract which was afterwards entered into between the parties to the original deed shows clearly the character of the original deed, and is sufficient of itself to show that the original deed was intended as a mortgage to secure Mr. Cannon the amount named therein as a consideration for the deed. When the contract of February 3, 1906, set out above in full, was entered into, the parties no doubt made a settlement of their affairs up to that time, and it was then found that there was a balance of $17,200 due from Mr. McGinley to Mr. Cannon.

Even though this agreement was made some two years and a half after the original deed was made, we have no doubt that it was made because of that deed, if it may not be said to be a part of the same transaction. This contract shows upon its face that Mr. McGinley was recognized by Mr. Cannon as a half owner of the property, subject to the payment of $17,200, because the contract provides that, in case of the death of either party, the survivor shall have the right to purchase the interest of the other for the appaised value. It also clearly shows that, upon the payment of $17,200, Mr. McGinley would be an equal owner in the property. When these two instruments are construed together, even if there were no other evidence in the case, it shows conclusively that the two instruments, taken together, were intended as a mortgage of Mr. McGinley's interest in the property to Mr. Cannon for the amount stated, at the time the contract was entered into on February 3, 1906. Outside of these two agreements, the evidence of disinterested witnesses clearly shows that these two instruments were intended by the makers thereof as a mortgage to secure the payment of the debt owing by Mr. McGinley to Mr. Cannon. The evidence of disinterested witnesses also shows without dispute that this was not the whole reason for making the deed. It was made for

the purpose of permitting Mr. Cannon to borrow money up-
on the property, and also for the purpose of preventing the
property being incumbered by Mr. McGinley.   We are satis-
fied that the trial court properly held this contract and the
original deed from McGinley to Cannon to constitute a mort-
gage in favor of Mr. Cannon.   It is not necessary, therefore,
to enter into a discussion whether the original deed was a
deed in express trust, or whether an express trust might be
proved by parol.   There is clearly sufficient here to show
that the original deed was intended as a mortgage, and was
so held and construed by both parties thereto during the
lifetime of Mr. Cannon.

It is next argued by the appellants that the trial court
erred in confirming the report of the referee, and in finding
that the indebtedness from Mr. McGinley to the estate of
Mr. Cannon, deceased, was no greater than $17,012.41 at
the time of the trial.   After the court had adjudged that the
deed and contract constituted a mortgage, the case was re-
ferred to a referee for an accounting.   The referee found
that, after all credits for rent and all debits for money ad-
vanced for the building had been taken into account,
there was owing by Mr. McGinley to the estate of John
Cannon, deceased, the sum of $17,012.41.   He also found
that Mr. Cannon had placed a mortgage upon the property
which was yet unsatisfied; and which amounted to $16,000;
that the property was liable for this mortgage; that Mr.
McGinley was entitled to credit upon his indebtedness to the
estate of one-half of the mortgage; and that, upon payment
of $9,012.41, he would be entitled to his one-half interest
in the property.

The appellants contend that the court erred in confirming
the report of the referee to the effect that the Cannon estate
was liable for rent provided for in the lease to Mr. Sheehan,
which was therein agreed to be $6 per room per month.
There was evidence introduced to the effect that the reason-
able value of the rent for these rooms was only $3 per room

per month; and it is argued that, upon Mr. Sheehan's death and upon Mr. Cannon acquiring the interest of Mr. Sheehan's estate in the lease, the lease was merged in the title, and that the Cannon estate was therefore lawfully liable for only the reasonable rent. But as we have seen above, Mr. Cannon and Mr. McGinley were joint tenants in the property. There was never any claim by Mr. Cannon in his lifetime that Mr. McGinley was not the owner of one-half interest in the property. It is true the legal title to the property stood in Mr. Cannon's name. He executed the lease to Mr. Sheehan at the stipulated price. He afterwards purchased Mr. Sheehan's interest in the lease; but he held over under that lease during the term of the lease and accounted for the rents of the building at the prices named in the lease. After his death, his executors accounted for the rents upon the same basis. It seems plain that their construction of the lease, and of Mr. Cannon's tenancy, ought to control at this time. There was no notice by Mr. Cannon to Mr. McGinley that he was not holding over under the terms of the lease after it had expired; but his conduct during his life, and that of his executors after his death, shows that they were holding under the terms of the lease, and not as a tenant in common with Mr. McGinley, but as lessee from the owning partners. In *O'Connor v. Delaney*, 53 Minn. 247, 54 N. W. 1108, 39 Am. St. 601, it was said:

"But, by agreement, one may become tenant of the other of his part of the estate; and, when the relation of landlord and tenant is thus created, we think the tenant co-owner, if he remain in exclusive possession after the terms for which his cotenant's share was let to him, will be held to do so in his character of tenant, and the same rules will apply as in case of any other tenant holding over. It was therefore correct to charge the defendant, during the time of his so holding over, at the rate of rent agreed on for the term."

See, also, *Schmidt v. Constans*, 82 Minn. 347, 85 N. W. 173, 83 Am. St. 437; *Harry v. Harry*, 127 Ind. 91, 26 N. E. 562. We are of the opinion, therefore, that the trial court

properly allowed the item of rent as provided for in the original lease. Other items are questioned by the appellants; but we find no reason why these items were not properly considered and allowed by the court. Numerous items are set forth in the accounts. From a careful examination thereof, we are unable to find any error.

The judgment is therefore affirmed.

MORRIS, C. J., ELLIS, and FULLERTON, JJ., concur.