82 P.3d 684 (2004)
119 Wash.App. 596
Akbar FALLAHZADEH, Respondent,
v.
Abraham GHORBANIAN and Jane Doe Ghorbanian, husband and wife, and their marital community composed thereof; and Abraham Ghorbanian, D.D.S., P.S., Appellants.
Abraham Ghorbanian and Zahra Soltan, husband and wife; and Abraham Ghorbanian, D.D.S., P.S., a Washington Personal Service Corporation, Appellants,
v.
Akbar Fallahzadeh and Jaleh Montazeripoor, husband and wife, Respondents.
Nos. 50766-4-I, 51363-0-I.
Court of Appeals of Washington, Division 1.
January 5, 2004.
Kenneth Wendell Masters, Charles Kenneth Wiggins, Bainbridge Island, Charles Edward Watts, Bellevue, for Appellants/Cross-Respondents.
Roger James Kindley, Robert Richard King, Ryan Swanson & Cleveland PLLC, Seattle, for Respondent/Cross-appellants.
John C. Bjorkman and Alan Wicks, Preston Gates & Ellis LLP, Seattle, on behalf of Washington Dental Association, amicus curiae.
COLEMAN, J.
Akbar Fallahzadeh prevailed in an unlawful detainer action he commenced to collect unpaid rent from a dental practice, Abraham Ghorbanian, DDS, PS. Ghorbanian's practice and Fallahzadeh owned as tenants-in-common the building where the practice was *685 located, but they entered into a lease agreement for the practice to rent the building and pay Fallahzadeh rent in the amount of 50 percent of the practice's net profits. Ghorbanian contends on appeal that the trial court erred in enforcing the lease because it constituted the illegal practice of dentistry by his landlord, a non-dentist. We agree with Ghorbanian that the lease constituted an illegal partnership between a professional and a nonprofessional. We reverse and dismiss.

FACTS
Abraham Ghorbanian is a licensed dentist who was employed by Sunrise Dental Family Center, Inc. Sunrise's owners offered him the opportunity to purchase the dental practice and the building where it was located. Due to his inexperience in business matters, Ghorbanian asked a senior member of the Persian American community, Akbar Fallahzadeh, to act as a partner in purchasing the practice. Together they consulted an attorney, Greg Lucas.
Lucas informed Ghorbanian and Fallahzadeh that it was illegal to form a partnership between a dentist and a non-dentist, but that they could be partners in the purchase of the building, which could be leased to the practice. Lucas agreed to represent the two after explaining the potential conflict of interest and obtaining signed waivers. Lucas advised Ghorbanian and Fallahzadeh to independently discuss and agree upon the terms of their transaction. After Ghorbanian and Fallahzadeh discussed the matter privately, they returned to Lucas and instructed him to draft a lease agreement providing for Fallahzadeh to lease the building to the practice in exchange for rent in the amount of 50 percent of the practice's net profits. Net profits was defined as all profits after deducting ordinary operating expenses but before deducting the mortgage payment or Ghorbanian's salary. Lucas presented a draft commercial lease to Ghorbanian and Fallahzadeh for their review in December 2000. They executed the lease in March 2001 when they purchased the building.
In December 2000, Ghorbanian bought the dental practice, making a down payment and executing a promissory note for the balance. Fallahzadeh signed a $200,000 personal guaranty for the promissory note. Lucas testified that the sellers demanded this guaranty as a condition of the sale. Ghorbanian immediately began operating his practice and employed Fallahzadeh as his office manager. As office manager, Fallahzadeh had check-writing authority and handled the practice's accounts. Fallahzadeh periodically deposited personal funds into the accounts as loans to the practice. He routinely transferred funds, which included loan repayments, rent, and his $5,000 monthly salary, from the practice's accounts to his personal accounts.
Ghorbanian soon became concerned with Fallahzadeh's withdrawals from the practice's accounts. On September 8, 2001, he called the Renton Police to report possible embezzlement and instructed Fallahzadeh not to return to the office, effectively terminating his employment. Fallahzadeh did not return. On September 27, 2001, Fallahzadeh's attorney sent Ghorbanian a letter demanding that he pay rent allegedly overdue since July 2001. After receiving no response, Fallahzadeh filed an unlawful detainer action. Ghorbanian's answer raised several defenses, including the illegality of the agreement. He also filed a partition action and a declaratory judgment action to declare the lease invalid. The trial court consolidated the unlawful detainer and the declaratory judgment actions, but denied Ghorbanian's request to consolidate the partition action. After a three-day trial in February 2002, the court issued a letter ruling in which it determined that the lease was legal. The court also found that there was no unlawful detainer due to the practice's status as a tenant-in-common. The court subsequently entered findings of fact and conclusions of law in which it concluded that the practice owed Fallahzadeh $111,265.13 in rent based upon the practice's profits from March 2001 until April 2002, plus $40,000 in attorney fees. The court entered judgment in those amounts on July 2, 2002, and further ordered that Fallahzadeh be paid "minimum rent," defined in the lease as one-half of the market rate for the months in which there was no profit. After a special master determined the minimum rent due, the court *686 entered a supplemental judgment for that amount, $28,875.43, plus attorney fees.

DISCUSSION
The legality of an agreement is a question of law that is reviewed de novo. Morelli v. Ehsan, 110 Wash.2d 555, 558, 756 P.2d 129 (1988). Under RCW 18.32.020(3), any person who "owns, maintains or operates an office for the practice of dentistry" is engaged in the practice of dentistry. Unlicensed persons and entities may not engage in the practice of dentistry. State v. Boren, 36 Wash.2d 522, 531, 219 P.2d 566 (1950). This prohibition extends to most other learned professions, such as law, medicine, and optometry, in which it is considered harmful to the welfare of the public to permit unlicensed persons and entities to share a beneficial interest in a professional service entity. Morelli, 110 Wash.2d at 559, 756 P.2d 129.
Ghorbanian urges this court to examine the "reality" of the parties' business relationship, and conclude that his relationship with Fallahzadeh resulted in an illegal partnership between a dentist and a non-dentist. Fallahzadeh responds that it is common commercial practice to include rent provisions based upon a percentage of the tenant's profits and that these arrangements are legal and enforceable, as long as the tenant retains complete professional control. Fallahzadeh's position relies upon several non-Washington cases upholding percentage agreements applicable to professional service providers, including Bd. of Optometry v. Sears, Roebuck & Co., 102 Ariz. 175, 427 P.2d 126 (Ariz.1967) (holding that rent provision for 20 percent of optometrist's gross sales, repair work, and services was not an illegal employment agreement); Wyoming State Bd. of Examiners of Optometry v. Pearle Vision Ctr., Inc., 767 P.2d 969 (Wyo.1989) (holding that 8.5 percent "franchise fee" on gross revenues did not violate statute prohibiting fee-splitting); and Bronstein v. Bd. of Registration in Optometry, 403 Mass. 621, 531 N.E.2d 593 (Mass.1988) (holding that 15 percent rent provision for gross receipts over $500,000 did not constitute illegal fee-splitting). While we acknowledge that percentage rent provisions are not per se illegal in leases to professionals, none of these cases is particularly helpful because none involves a percentage as large as 50 percent, none involves tenants-in-common, and none addresses the issue here, which is whether this type of leasing arrangement violates Washington's statute prohibiting a non-dentist from owning, operating, or maintaining an office for the practice of dentistry.
Factually, this case is similar to Boren, which addressed whether two non-dentists were illegally owning and operating a dental practice. In Boren, two non-dentists entered into a conditional sales contract with a dentist who agreed to pay $55,000 for an on-going dental practice in $750 monthly installments. Boren, 36 Wash.2d at 523, 219 P.2d 566. The non-dentists had previously engaged in partnerships that owned and sold other practices in Western Washington. Under the contract, the dentist drew a $500 salary and one of the non-dentists worked for $500 each month as office manager  "`buying the supplies and watching the charts and making out the accounts and payments, and general manager, and looking after the advertising.'" Boren, 36 Wash.2d at 524, 219 P.2d 566. The office manager also withdrew monthly bonus payments "in appreciation of the increase in business." Boren, 36 Wash.2d at 524, 219 P.2d 566. The court held that these activities fell within the statutory prohibition on owning, operating, or maintain an office for the practice of dentistry. Boren, 36 Wash.2d at 532, 219 P.2d 566.
Many of the facts seen in Boren can also be seen here. Fallahzadeh worked for nine months as Ghorbanian's office manager. In that capacity, Fallahzadeh assumed sole responsibility for handling the practice's finances to the extent that he routinely would transfer loan repayments, rental payments, and salary payments from practice accounts to his personal accounts.
Fallahzadeh argues that Boren is distinguishable because his firing demonstrated that Ghorbanian retained complete control of all business and professional activities for his practice. Under Washington law, however, Fallahzadeh's non-involvement in the delivery of professional services is not determinative. *687 In State ex rel. Standard Optical Co. v. Superior Ct. for Chelan County, 17 Wash.2d 323, 334, 135 P.2d 839 (1943), the fact that an optometrist retained complete professional control did not prevent the Washington Supreme Court from concluding that his employer was illegally maintaining and operating an optometry practice. Furthermore, this distinction is not particularly persuasive in light of the 50 percent net profit rent provision and the other terms of the lease. Regardless of whether Fallahzadeh was employed by the practice, he still retained a substantial beneficial interest in the practice's profits. In this respect, the lease is no different than Boren`s conditional sales contract, which also guaranteed to the sellers a steady income stream from the practice. Furthermore, Fallahzadeh reserved significant rights under the lease as landlord. He had sole and exclusive discretion to approve any changes, modifications, or alterations. Thus, his absence from the practice's day-to-day operations did not affect his ability to control certain aspects of Ghorbanian's practice, such as making physical improvements to the premises that might be necessary for patient care. It is exactly these public health and welfare concerns that were discussed in Standard Optical as the basis for invalidating the employment relationship.
The ethics of any profession is based upon personal or individual responsibility. One who practices a profession is responsible directly to his patient or his client. Hence he cannot properly act in the practice of his vocation as an agent of a corporation or business partnership whose interests in the very nature of the case are commercial in nature.
Standard Optical, 17 Wash.2d at 332, 135 P.2d 839 (quoting Ezell v. Ritholz, 188 S.C. 39, 198 S.E. 419, 424 (1938)).
Fallahzadeh further argues that the profit-based rent provision is legal because in Prichard v. Conway, 39 Wash.2d 117, 234 P.2d 872 (1951), the court approved profit-sharing between dentists and non-dentists, but Prichard is not on point. In Prichard, a dentist's widow sold her deceased husband's practice to another dentist. She reserved the right to manage the office, to receive installment payments, and to receive net profits of 70 percent the first year, 60 percent the second year, and 55 percent for years three through five. Prichard, 39 Wash.2d at 118-19, 234 P.2d 872. Upon viewing these profit-sharing provisions in context of the entire transaction, the Prichard court concluded that this arrangement was entirely lawful as a means of transferring the good will of the practice. Prichard, 39 Wash.2d at 125, 234 P.2d 872. Furthermore, the seller's involvement in the office management was limited to tasks routinely performed by nonprofessional employees and was intended to facilitate transfer of the practice's business operations to the buyer.
Prichard found legitimate reasons for incorporating profit-sharing provisions. In contrast, Fallahzadeh has offered no explanation for why he and Ghorbanian agreed to a rent amount that grossly exceeded the market rate. For the first six months of the agreement, monthly rent for the building averaged at $21,916, based upon the special master's calculations. The market rate for the building during this period was determined to be approximately $3,700. When this disparity is viewed together with Ghorbanian's inability to deduct standard expenses, such as the mortgage payment or his salary, from his monthly profits before paying rent, it is clear that the lease enabled Fallahzadeh to obtain a financial interest in the partnership in violation of Washington law.[1] The trial court's finding that Fallahzadeh did not seek to create a sham partnership or act in bad faith does not alter this outcome.
In reaching this decision, we acknowledge that percentage leases can provide an efficient means of determining the value of commercial property, even when health-related professions are involved. State ex rel. Bd. of Optometry v. Sears, Roebuck *688 & Co., 102 Ariz. 175, 427 P.2d 126, 128 (1967). Of course, each case must be evaluated on its merits, with consideration of all relevant factors to determine whether a particular transaction runs afoul of the statutory prohibition. Here, the only reasonable explanation for the 50 percent net profit rent provision is to allow Fallahzadeh to realize the benefits of owning the practice. Consequently, the trial court erred when it determine that the agreement was illegal. When a court determines that an agreement is void against public policy, the rule is to leave the parties in the positions where the court finds them, even if they acted in good faith. Morelli, 110 Wash.2d at 561, 756 P.2d 129. "If the parties are not in pari delicto, however, the less culpable party may maintain an action based on an illegal contract." Morelli, 110 Wash.2d at 562, 756 P.2d 129. There is no evidence here that the parties are not in pari delicto, as both entered into this agreement willingly and with full knowledge of its provisions. Accordingly, we decline to effect a judicial disposition of the parties' debts, entitlements, or obligations. We also deny both parties' requests for attorney fees.
Ghorbanian next contends that trial court erred when it denied his motion to convert the unlawful detainer action to a suit for partition, arguing that a tenant-in-common is incapable of being in unlawful detainer. We are not necessarily convinced, however, that a tenant-in-common is not subject to the same rules in unlawful detainer as other tenants once the right to possess property has been altered pursuant to a valid lease. See McGinley v. Cannon, 90 Wash. 311, 318, 155 P. 1047 (1916) (citing O'Connor v. Delaney, 53 Minn. 247, 54 N.W. 1108 (1893)). Nevertheless, in part because this case consisted of both unlawful detainer and declaratory judgment actions and also due to the subsequent termination of the parties' cotenancy while this appeal was pending, we conclude that it is not necessary to decide this issue.
We reverse and dismiss.
BAKER and APPELWICK, JJ., concur.
NOTES
[1] There is also unique evidence in this case that suggests that Fallahzadeh viewed his relationship to Ghorbanian's practice as more than just landlord and tenant. It is undisputed that Fallahzadeh approached another dentist to ask whether he would be interested in buying Fallahzadeh's share of the practice.