# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CHOONG H. LEE, DMD, PLLC, a
professional limited liability company, CH
LEE, PLLC, a professional limited liability
company,

                          Appellants,

               v.

THAHELD/LEE-01, LLC, a Washington
limited liability company, and JOHANN
THAHELD, believed to be an unmarried
resident of Washington,

                       Respondents.

No. 68417-5-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 10, 2014

APPELWICK, J. — Lee is a licensed Washington dentist who owns and operates two dental practices in Whatcom County. He entered into a service agreement with Thaheld, a nondentist, to aid in operation and management of the practices. Lee argues that the agreement is illegal in its entirety, because it violates Washington's prohibition on corporate practice of dentistry, RCW 18.32.675(1). We agree. We therefore reverse the decision of the trial court and remand with instructions to enter partial summary judgment in Lee's favor.

## FACTS

Dr. Choong-hyun Lee is a licensed Washington dentist and has practiced dentistry in Whatcom County since 2004. He operates one dental practice in Bellingham through the legal entity Choong H. Lee, DMD, PLLC, and a second practice in Blaine through the entity CH Lee, PLLC—collectively "Lee Dental Practices." Johann Thaheld is not a dentist, but is the sole member and owner of Thaheld/Lee-01 LLC, a

dental consulting service business.[1] Thaheld is also a full-time faculty member at Western Washington University and holds a Juris Doctorate.

By mid-2010, Lee's practices were struggling and losing money. During this time, Lee met Thaheld, who reviewed financial statements, contracts, scheduling practices, payroll, and other aspects of Lee's two practices. Thaheld noticed a number of administrative and accounting problems that he communicated to Lee.

On July 21, 2010, Lee and Thaheld executed a service agreement. The Agreement called Lee Dental Practices the "Providers" and Thaheld/Lee-01 LLC the "Service Company." The stated purpose of the agreement was to allow Lee to focus his time and energy on practicing dentistry and delivering dental services. The Service Company agreed to provide services necessary "for the day-to-day administration of the non-dental aspects of Providers' dental practice." Thaheld and Lee agreed that the Service Company would be compensated with a salary equal to Lee's salary or $120,000, whichever was higher; a bonus of one half the practices' net profits; and one half the increased terminal value of the practices.

The parties' relationship deteriorated over the following months. On March 18, 2011, Lee filed a complaint against Thaheld seeking declaratory judgment, injunctive relief, and monetary damages. Lee alleged that the service agreement gave Thaheld an impermissible financial interest in and substantial control over Lee Dental Practices.

---

[1] Choong H. Lee, DMD, PLLC and CH Lee PLLC are appellants here. We refer to these companies collectively as "Lee" or "Lee Dental Practices." Thaheld/Lee-01 LLC and Johann Thaheld, in his individual capacity, are respondents here. We refer to the respondents collectively as "Thaheld."

2

He also alleged that the agreement was substantively unconscionable, because Thaheld made material misrepresentations to induce Lee to sign it.

Thaheld counterclaimed for breach of contract, specific performance, unjust enrichment, and breach of employment obligations. Thaheld requested that the trial court dismiss Lee's complaint in its entirety. Alternatively, he asked the trial court to enter a judgment declaring the service agreement to be legal.

Lee subsequently moved for partial summary judgment. He requested that the trial court declare the service agreement illegal and unenforceable as a matter of law. He argued that the agreement violated Washington's statutory prohibition on unlicensed corporate practice of dentistry, RCW 18.32.675(1).

The trial court denied Lee's motion for partial summary judgment on January 27, 2012. However, the trial court certified its order for immediate review. Lee filed a notice for discretionary review with this court, requesting review based on the trial court's certification of the issue. We concluded that discretionary review was proper and granted the motion.

## DISCUSSION

The issue on appeal is whether the trial court erred in denying Lee's motion for partial summary judgment. Lee argues that the service agreement grants Thaheld an impermissible role in Lee Dental Practices. Specifically, he contends that the agreement gives Thaheld expansive control over Lee's practices, enmeshes Thaheld in the practices' finances, and imposes onerous restrictions on Lee's professional freedom. Lee contends that this violates RCW 18.32.020(3) and RCW 18.32.675(1)

that together forbid nondentist corporations from owning, operating, or maintaining dental practices.

In response, Thaheld argues that the agreement is valid as a matter of law, because Lee retained complete control over all aspects of his dentistry practice. In any event, Thaheld contends, the parties modified the agreement by their conduct, creating questions of fact about its meaning. Thaheld also argues that, when interpreting the agreement, we should recognize changes to the practice of dentistry in light of modern economic realities.

We review summary judgment orders de novo. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 501, 115 P.3d 262 (2005). Summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id.; CR 56(c). We review all facts and reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. CTVC of Haw. Co. v. Shinawatra, 82 Wn. App. 699, 708, 919 P.2d 1243, 932 P.2d 664 (1996). The legality of an agreement is a question of law reviewed de novo. Fallahzadeh v. Ghorbanian, 119 Wn. App. 596, 601, 82 P.3d 684 (2004).

I.  Legality of Service Agreement

Washington law prohibits the corporate practice of dentistry. RCW 18.32.675(1) specifies:

> No corporation shall practice dentistry or shall solicit through itself, or its agent, officers, employees, directors or trustees, dental patronage for any dentists or dental surgeon employed by any corporation: PROVIDED . . . [that this prohibition shall not] apply to corporations or associations furnishing information or clerical services which can be furnished by persons not licensed to practice dentistry, to any person

4

lawfully engaged in the practice of dentistry, when such dentist assumes full responsibility for such information and services.

Under RCW 18.32.020(3), any person who "owns, maintains or operates an office for the practice of dentistry" is engaged in the practice of dentistry.

This prohibition extends to most other learned professions that affect public health and welfare, such as law, medicine, and optometry. Morelli v. Ehsan, 110 Wn.2d 555, 559, 756 P.2d 129 (1988). The Washington Supreme Court has explained the reason for such prohibitions:

> The ethics of any profession is based upon personal or individual responsibility. One who practices a profession is responsible directly to his patient or his client. Hence he cannot properly act in the practice of his vocation as an agent of a corporation or business partnership whose interests in the very nature of the case are commercial in character.

State ex rel. Standard Optical Co. v. Superior Court for Chelan County, 17 Wn.2d 323, 332, 135 P.2d 839 (1943). The prohibition maintains a high standard of professional care by making dentists directly responsible to their patients, rather than a corporation. State v. Boren, 36 Wn.2d 522, 528, 219 P.2d 566 (1950).

When a contract gives a nondentist or corporation the power to influence the operation of a dental practice and share in the practice's profits, Washington courts hold such contracts to be illegal. See, e.g., Morelli, 110 Wn.2d at 560-61; Boren, 36 Wn.2d at 524, 532; Fallahzadeh, 119 Wn. App. at 603-04. In determining whether an illegal business relationship exists between a dentist and a nondentist corporation, we consider: (1) the extent to which the corporation exercises control over the practice's operations and (2) the nature of the payment scheme between the practice and the corporation. See Fallahzadeh, 119 Wn. App. at 603-05; see also OCA, Inc. v. Hassel, 389 B.R. 469, 476 (E.D. La. 2008).

5

For instance, in Boren, two nondentists entered into a conditional sales contract with a dentist who agreed to pay $55,000 for an on-going dental practice in $750 monthly installments. 36 Wn.2d at 523. Under the contract, the dentist drew a $500 monthly salary. Id. at 524. One of the nondentists worked for $500 a month as office manager—"'buying the supplies and watching the charts and making out the accounts and payments, and general manager, and looking after the advertising.'" Id. The office manager also received monthly bonus payments "in appreciation of the increase in business." Id. The court held that this activity by a nondentist constituted owning, operating, or maintaining a dentistry practice, and violated Washington law. Id. at 532.

In Fallahzadeh, Abraham Ghorbanian was a licensed dentist employed by Sunrise Dental Family Center, Inc. 119 Wn. App. at 599. Sunrise's owners offered Ghorbanian the opportunity to purchase the dental practice and building where it was located. Id. Inexperienced in business matters, Ghorbanian asked Akbar Fallahzadeh, a nondentist, to act as a partner in purchasing the practice. Id. They signed a lease agreement in which Fallahzadeh would lease the building to the practice in exchange for 50 percent of the practice's net profits as rent. Id. at 600. Ghorbanian bought the practice, making a down payment and executing a promissory note for the balance. Id. Fallahzadeh signed a $200,000 personal guaranty for the note. Id.

Ghorbanian employed Fallahzadeh as office manager. Id. Fallahzadeh had check-writing authority and handled the practice's accounts. Id. In addition, he periodically deposited personal funds into the accounts as loans to the practice. Id. However, their relationship soon soured. Id. Ghorbanian became concerned that Fallahzadeh was embezzling and instructed him not to return to work, effectively

terminating Fallahzadeh's employment. Id. Fallahzadeh brought an unlawful detainer action against Ghorbanian. Id. Ghorbanian raised several defenses, including the illegality of the agreement. Id.

On appeal, we considered whether the parties' business relationship resulted in an illegal partnership between a dentist and a nondentist. Id. at 601. We found Fallahzadeh's office management analogous to Boren, because in both cases a nondentist had complete control over the practice's finances. Id. at 602-03. With the 50 percent net profit rent provision, Fallahzadeh also retained a substantial beneficial interest in the practice's profits. Id. at 603. The rent grossly exceeded market rate, indicating that the purpose was to give Fallahzadeh a financial interest in the practice. Id. at 604-05. And, as landlord, Fallahzadeh had exclusive control over physical improvements to the premises that might be necessary for patient care. Id. at 603-04. These are precisely the public health and welfare concerns that give rise to the law against corporate practice of dentistry. Id. at 604. Therefore, we held the agreement between Fallahzadeh and Ghorbanian to be illegal and void. Id. at 605.

Lee also cites a federal district court case to argue that the service agreement here is illegal: OCA, Inc., 389 B.R. 469.[2] In OCA, Inc., two Washington orthodontists entered into long-term service agreements with Orthodontic Centers of America, Inc. (OCA), which provides office management and patient billing support. Id. at 472. The contracts gave OCA exclusive control over the practices' revenues and bank accounts.

---

[2] Lee cites Engst v. Orthalliance, Inc., No. C01-1469C (W.D. Wash. Mar. 1, 2004), an unpublished federal district court order, for the same proposition. However, we do not discuss that case here, because Federal Rule of Appellate Procedure 32.1(a) prohibits courts from citing unpublished federal judicial opinions issued prior to January 1, 2007.

Id. The orthodontists agreed to pay OCA a specified sum for each "'patient hour,'" along with 50 percent of each practice's profits. Id. The court held that OCA's control over the practices' operations and its beneficial interest in the practices' profits violated Washington law. Id. at 478.

Several provisions of the service agreement give Thaheld (the Service Company) the power to exercise significant control over Lee's practices. For instance, the agreement creates a two member policy board, responsible for development, management, and overall operation of the practices. The agreement names Lee and Thaheld as the initial policy board members. A majority vote is required for all decisions. The board's responsibilities and authority include: capital improvements and expansion, marketing and advertising, setting patient fees and collection policies, establishing and maintaining contractual relationships with other providers and third-party payors, strategic planning, capital expenditures, patient concerns and claims, workplace health and safety, and approving or disapproving any merger with or acquisition of another dental practice.

The agreement also gives the Service Company power to negotiate and enter into contracts "with third parties as are reasonably necessary and appropriate for Providers' provision of Dental Care." Lee must execute contracts at the Service Company's behest. He must sign all leases and intellectual property over to the Service Company. The agreement also specifies that, for an initial term of 40 years, Lee cannot voluntarily terminate his employment without finding another qualified dentist to replace him. These provisions result in Thaheld being substantially in control of Lee's practices, even if he is not practicing hand-in-mouth dentistry.

8

Like <u>Boren</u> and <u>Fallahzadeh</u>, Thaheld also assumed sole responsibility for handling the practices' accounts—both in fact and under the terms of the agreement. The agreement gives the Service Company irrevocable, "exclusive special power of attorney" to bill patients; manage all accounts; and take possession of, endorse, and deposit all payments for dental care. The agreement further makes the Service Company agent and attorney in fact for Lee's practices.

Significantly, the service agreement gives Thaheld a substantial beneficial interest in Lee's practices. The agreement provides for the Service Company to be paid an annual service fee equal to the highest paid dentist's salary or $120,000, whichever is greater. In addition, the Service Company shall receive a formula-based monthly performance fee from 10 percent up to 50 percent of the practices' profits. Thaheld also stated in his declaration that he and Lee agreed that the Service Company would receive a bonus of one half the practices' net profits. This is analogous to <u>Fallahzadeh</u> and <u>OCA, Inc.</u>, where the nondentists' payment included 50 percent of the practices' profits.

And, not only does Thaheld retain a substantial beneficial interest in the practices' profits, he also has the power to terminate the agreement. In the event of termination, Lee must immediately sell the practices on the open market. Fifty percent of the net sales proceeds must go directly to the Service Company. These profit sharing provisions give Thaheld an impermissible financial interest in the Lee's dental practices.

Thaheld points to several provisions in the agreement to argue that Lee nevertheless retains complete control over dental care decisions and the practice of

dentistry. For instance, ¶ 2.5 specifies that dentists "shall be solely responsible for and shall have complete authority, responsibility, supervision, and control over the provision of all Dental Care." The same provision further states that the "Service Company shall not have or exercise any control or supervision over the provision of Dental Care." Other provisions specify the same: ¶ 3.4 (all dental decisions will be made solely by dentist members of the Policy Board[3]), ¶ 11.1 (dental care shall be the sole responsibility of dentists and the Service Company shall not interfere), ¶ 11.2 (the Service Company is an independent contractor and cannot exercise control over the manner or method of dentistry services).

However, these provisions do not save the agreement from illegality. Washington law is clear that noninvolvement in delivery of professional services is not determinative. Fallahzadeh, 119 Wn. App. at 603. This is apparent from the structure of RCW 18.32.020, which provides several definitions for the practice of dentistry. Most definitions include typical hand-in-mouth dentistry, such as cleaning teeth, diagnosing tooth pain, performing x-rays, and so on. See, e.g., RCW 18.32.020(1), (2), (5). Conversely, owning, maintaining, or operating an office for practice of dentistry under RCW 18.32.020(3) does not involve only the direct delivery of hand-in-mouth dentistry services. Such activity is nevertheless impermissible for a nondentist. See Boren, 36 Wn.2d at 532.

Indeed, we rejected Fallahzadeh's argument that his firing demonstrated that Ghorbanian retained complete control of all business and professional activities for the

---

[3] However, this provision goes on to state: "provided that nondentist members of the Policy Board may participate in the analysis and discussion process."

dentistry practice. Fallahzadeh, 119 Wn. App. at 603. In Standard Optical, the fact that an optometrist retained complete professional control did not prevent the Washington Supreme Court from concluding that his employer was illegally maintaining and operating an optometry practice. 17 Wn.2d at 334-35. Likewise, in OCA, Inc., simply because OCA refrained from making decisions about individual patient care did not mean it lacked requisite interest in or control over the orthodontists' practices. 389 B.R. at 478. The same is true here.

Finally, Thaheld argues that, when interpreting the agreement, we should recognize changes to the practice of dentistry in light of modern economic realities. This is a policy argument best addressed to the legislature. For now, the statutory prohibition and case law are clear that nondentists may not own, operate, or maintain a dental practice.

We reverse the trial court and hold that the service agreement is an illegal contract, because it results in Thaheld owning, operating, or maintaining Lee's dental practices. This effectively creates a partnership between a dentist and a nondentist, which violates Washington's prohibition on corporate practice of dentistry.

II.    Effect of Illegal Agreement

The service agreement here is facially invalid, because it creates an illegal partnership between a dentist and a nondentist. Thaheld nevertheless argues that this issue is not resolvable on summary judgment, because there are genuine issues of material fact. He contends that the parties' subsequent conduct indicates that they did not intend to give Thaheld impermissible control over Lee's dental practices. For instance, Thaheld argues that Lee actually asserted unilateral control over almost all

11

business decisions, such as closing the Blaine practice and not paying Thaheld as they agreed.

However, the parties' conduct does not go to whether the agreement is void as a matter of law. The legality of such an agreement is a question of law, not a question of fact. Fallahzadeh, 119 Wn. App. at 601. Moreover, we rejected this very argument in Fallahzadeh: Thaheld's lack of involvement in hand-in-mouth dentistry does not preclude his ability to exert significant control over Lee's practices. See id. at 603-04.

In the alternative, Thaheld argues that the parties modified the agreement by their subsequent conduct. Thaheld is correct that, when interpreting a written contract, courts may consider extrinsic evidence to ascertain the parties' intent. Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 84, 60 P.3d 1245 (2003). This includes the parties' subsequent acts and conduct. Id. However, admissible extrinsic evidence does not include evidence that would vary, contradict, or modify the written word. Hollis v. Garwall, Inc., 137 Wn.2d 683, 695, 974 P.2d 836 (1999). Thaheld attempts to contradict the written words of the agreement by arguing that the parties' subsequent conduct shows that they did not intend to enforce the agreement as written.

An illegal contract is void and unenforceable. In re Marriage of Hammack, 114 Wn. App. 805, 810, 60 P.3d 663 (2003). Such a contract is void ab initio, or, in other words, null from the beginning. Id. at 810-11. It is as if the contract was never created, because a void agreement is by definition not a contract. 25 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: CONTRACT LAW AND PRACTICE § 1:7, at 12 (2d ed.

12

2007). The entire relationship between Lee and Thaheld violates Washington law. Thus, the entire agreement fails and no part of it can be enforced.[4]

We reverse the decision of the trial court and remand with instructions to enter partial summary judgment in Lee's favor.

Appelwick, J.

WE CONCUR:

---

[4] A savings clause in a void contract is also unenforceable. See Golden Pisces, Inc. v. Fred Wahl Marine Const., Inc., 495 F.3d 1078, 1081-82 (9th Cir. 2007).